FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAY 14 PM 3:52
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ROCHESTER STURGIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-040 |
| | ) | |
| ROBERT TOOLE, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate incarcerated at Wilcox State Prison, in Abbeville, Georgia, brought the above-captioned petition pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I. **BACKGROUND**

In December of 2005, a McDuffie County grand jury indicted Petitioner for one count of malice murder (count one), one count of felony murder (count two), three counts of aggravated assault (counts three, five, and seven), three counts of possession of a firearm during the commission of a crime (counts four, six, and eight), and one count of possession of a firearm by a convicted felon (count nine). (Doc. no. 7-11, pp. 86-88.) Following a jury

---

[1]Petitioner is incarcerated at Wilcox State Prison, where the warden is Robert Toole. As the warden of Petitioner's current place of incarceration is the proper Respondent in this case, pursuant to Fed. R. Civ. P. 25(d)(1), the **CLERK** is **DIRECTED** to substitute Robert Toole as Respondent in this case.

trial in the Superior Court of McDuffie County, Petitioner was found not guilty as to counts seven and eight; he pled guilty to count nine, and he was found guilty as to all the remaining counts. (Doc. no. 7-9, pp. 47-59; doc. no. 7-12, pp. 13-14.) Petitioner was sentenced to a term of life imprisonment on count one[2]; a five-year term of imprisonment on count four, to run consecutively to the life sentence; a 15-year term of imprisonment on count five, to run consecutively to the life sentence but concurrently with count four; and five-year terms of probation on counts six and nine, to run consecutively to count five. (Doc. no. 7-12, pp. 27-28.)

Petitioner was appointed new counsel after trial and filed a direct appeal in which he claimed that the evidence was insufficient to sustain his convictions for malice murder and aggravated assault. He also claimed that his trial counsel provided ineffective assistance by failing to listen to an audiotape of his conversations with Georgia Bureau of Investigation ("GBI") agents prior to the tape being played at trial. (Doc. no. 7-12, pp. 44-55.) On June 4, 2007, the Georgia Supreme Court rejected Petitioner's contentions and affirmed his convictions. Sturgis v. State, 646 S.E.2d 233, 234-36 (Ga. 2007).

On January 25, 2008, Petitioner filed a state habeas corpus petition in the Superior Court of Macon County in which asserted the same four claims of ineffective assistance of appellate counsel that he alleges in the instant § 2254 petition, which are described below. Following an evidentiary hearing, the state habeas court denied the petition in its entirety on November 25, 2009. (Doc. no. 7-3.) The Georgia Supreme Court denied Petitioner's

---

[2]At sentencing, the judge merged counts two (felony murder) and three (aggravated assault) with count one (malice murder). (Doc. no. 7-11, p. 85.)

application for a certificate of probable cause to appeal on January 14, 2011. (Doc. no. 7-4.)

Petitioner then timely filed the above-captioned § 2254 petition, in which he raises the following grounds for relief:

(1) the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that Petitioner committed the offense of malice murder;

(2) the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that Petitioner committed the offense of aggravated assault;

(3) Petitioner's trial counsel provided ineffective assistance by failing to listen to an audiotape of his conversations with GBI agents prior to the tape being played at trial;

(4) Petitioner's appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the fact that trial counsel did not introduce into evidence crime lab results that showed the bullet removed from the victim's body did not match Petitioner's gun;

(5) Petitioner's appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the fact that trial counsel did not inform Petitioner of the crime lab results mentioned in Ground Four prior to trial;

(6) Petitioner's appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the fact that trial counsel did not adequately prepare for trial and unduly influenced his decision to testify at trial; and

(7) Petitioner's appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on the fact that trial counsel did not move for a mistrial or request curative instructions when the prosecutor "cross-examined Petitioner in a harsh tone in regard to a single question and then threw his ink pen down in marked frustration" due to dissatisfaction with Petitioner's testimony.

(Doc. no. 1.) In his answer and brief in support of his answer, Respondent argues that Petitioner's § 2254 claims are without merit. (See doc. nos. 6, 6-1.) Following Respondent's

answer, Petitioner filed a brief in support of his claims.³ (Doc. no. 8.) The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 787 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

---

³Petitioner filed his brief outside the time limit set forth in the Court's prior Order directing Respondent to file and answer and providing the parties with instructions regarding their briefs. (Doc. no. 4, p. 2.) Nevertheless, the Court will consider the brief in ruling on the instant petition.

4

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398. In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA mandates a highly deferential standard of review for state court factual determinations. With regard to factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. ___, 130 S. Ct. 841, 848-49 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation and punctuation omitted)). Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence." See also Reese v. Sec'y, Fla. Dep't of Corr., ___ F.3d ___, No. 11-12178, 2012 WL 1059452, at *7 (11th Cir. Mar. 30, 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review." (quoting Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005) (punctuation omitted)).

### III. DISCUSSION

#### A. Sufficiency of the Evidence Claims Rejected on Direct Appeal

As noted above, in Grounds One and Two of his federal petition, Petitioner claims that the evidence admitted against him at trial was insufficient to prove beyond a reasonable doubt that Petitioner committed the offenses of malice murder and aggravated assault. (Doc. no. 1, pp. 7-9; doc. no. 8, pp. 1-3.) Evaluating these claims on direct appeal, the Georgia Supreme Court set forth the following summary of the trial evidence:

> On the morning of November 4, 2003, Rochester Sturgis went uninvited to the home of Bridget Vanessa Johnson and her roommate, Kenny Kendrick. Sturgis, a smalltime loan shark in the area, had been friends with Johnson for years and had loaned her money from time to time. He also loaned money to Kendrick on occasion at 50% weekly interest. The owner of the house,

Kendrick's mother, had previously told Sturgis on several occasions that he was not welcome there.

When Sturgis drove up, Johnson was in the kitchen preparing breakfast for herself, Kendrick, and one of their friends who was visiting, Kenneth Grant. Grant was relaxing on the sofa in the living room, and Kendrick was sitting outside on the porch. Sturgis demanded to know who was inside the house with Johnson. Kendrick was afraid Sturgis would become violent if he knew Johnson was in the house with another man, so he lied and said the other person in the house with Johnson was a woman named Loretta. Satisfied with this answer, Sturgis turned his vehicle around and left.

He returned shortly, however, after seeing Loretta walking down the street nearby. Sturgis confronted Kendrick about the lie, but once again, Kendrick was able to appease Sturgis, this time by agreeing to go for a ride with him. Kendrick then went back inside to change his shirt. When Kendrick emerged from his bedroom, Sturgis was standing inside the house. On seeing Grant, Sturgis said, "I done seen [sic] what I wanted to see." He ordered Johnson to take a ride with him, but she refused. Sturgis grabbed her by the wrists and started shaking her violently. Johnson said, "I told you, I don't want you. Leave me alone." Sturgis physically dragged Johnson towards the front door, and she stopped him only by bracing her feet against the door jamb.

Unable to wrench Johnson from her home, Sturgis said, "That's all right." He then went to his vehicle and returned with a gun. Johnson said over and over again that "It ain't [sic] what you think," but Sturgis simply cursed her, saying, "I told you . . . to take a ride with me." Johnson replied, "I ain't [sic] going nowhere with you," and Sturgis began waving the gun around the room. Gun in hand, Sturgis grabbed Johnson once again. When she managed to break free, Sturgis shot her one time in the chest, ending her life. Kendrick exclaimed, "[y]ou done shot [sic] her," to which Sturgis replied, "I meant to shoot her."

Sturgis then turned his attention to Kendrick and Grant. He pointed the gun in Grant's face and demanded to know the real reason he was there. Meanwhile, Kendrick ran to the back and tried to escape through a window, but it was nailed shut. He then hid under some clothes in a closet until Sturgis left. Grant insisted to Sturgis that he was only there to visit his friend and co-worker, Kendrick. This answer placated Sturgis, who said, "Well, I done shot [sic] her. You better go [sic] in there and see about her." Sturgis then left the house. He was arrested later that day.

The medical examiner determined that Johnson died from a single gunshot wound to the upper left chest. The bullet entered her chest and grazed her left

> lung and liver before perforating her heart and finally coming to rest in her spinal cord. Following Sturgis's arrest, the police retrieved a .38 caliber revolver from his vehicle. The weapon was fully loaded with the exception of one round.

Sturgis, 646 S.E.2d at 234-35. Applying the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), the Georgia Supreme Court viewed the evidence in the light most favorable to the verdict and stated, "[W]e have no difficulty concluding that the evidence presented at trial was more than sufficient to enable a rational trier of fact to find Sturgis guilty beyond a reasonable doubt of the crimes for which he was convicted." Id. at 35 & n.2.

As correctly noted by the Georgia Supreme Court, the standards from Jackson v. Virginia apply to claims of insufficiency of the evidence. 443 U.S. at 316. The Supreme Court held in Jackson that a conviction only comports with the Due Process Clause if the evidence produced at trial is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense in question. Id. The key inquiry is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Along with these basic principles regarding sufficiency of the evidence, the Court is also guided by the AEDPA's mandate that the state court's factual determinations are presumptively correct absent rebuttal by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

Here, the Court finds that in deciding Petitioner's challenges to the sufficiency of the evidence as to his malice murder and aggravated assault convictions, the Georgia Supreme Court did not reach a result contrary to a Supreme Court case with materially

indistinguishable facts.[4] Nor did the Georgia Supreme Court apply a rule that contradicts the governing law as set forth in Supreme Court precedent; to the contrary, as noted above, the Georgia Supreme Court applied the correct Supreme Court precedent – Jackson v. Virginia – in its analysis of Petitioner's claim.

Furthermore, Petitioner has not presented any evidence to rebut the presumptive correctness of the factual determinations made by the Georgia Supreme Court in its adjudication of Petitioner's direct appeal. In particular, Petitioner has not challenged the accuracy of the appellate court's account of the evidence at trial as viewed most favorably to the verdict, which included admissions by Petitioner, testimony from eye-witnesses, and physical evidence. Nor has Petitioner attempted to explain how the evidence was insufficient to satisfy any of the elements of the offenses at issue.[5]

Petitioner has also failed to show that the Georgia Supreme Court was objectively unreasonable in its application of the standards set forth in Jackson to his claim. In his § 2254 petition and brief, Petitioner provides nothing beyond conclusory assertions that Georgia Supreme Court's rejection of these claims was "erroneous" and "objectively unreasonable." (See doc. no. 1, pp. 7-9; doc. no. 8, pp. 1-3.) In light of the deference to the

---

[4]While Jackson did involve a challenge to murder conviction, the Court in Jackson determined that the evidence was sufficient to uphold the petitioner's conviction, as did the Supreme Court of Georgia in deciding Petitioner's claim. Jackson, 443 U.S. at 309, 323.

[5]Under Georgia law, "A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." O.C.G.A. § 16-5-1(a). Georgia law further provides that "a person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." Id. § 16-5-21(a)(2).

9

state court decision required by § 2254(d), these conclusory assertions are plainly inadequate for Petitioner to prevail on his sufficiency of the evidence claims.

In sum, Petitioner has not produced evidence that would rebut the presumption that the state court's factual determinations are correct, and he has not shown that the state court was objectively unreasonable in its determination that the evidence at trial was clearly sufficient for a jury to conclude beyond a reasonable doubt that he was guilty of malice murder and aggravated assault. Accordingly, Petitioner is not entitled to habeas relief on Grounds One and Two of his § 2254 petition.

### B. Ineffective Assistance of Trial Counsel Claim Rejected on Direct Appeal

In Ground Three of the instant petition, Petitioner claims that his trial counsel provided ineffective assistance by failing to listen to an audiotape of his conversations with GBI agents prior to the tape being played at trial. (Doc. no. 1, pp. 10-11; doc. no. 8, p. 4.) Petitioner also asserted this claim on direct appeal, and the Georgia Supreme Court denied the claim on the merits. Sturgis, 646 S.E.2d at 235-36. Specifically applying the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), the appellate court determined that Petitioner's trial counsel acted within the constitutional parameters of reasonableness in her representation of Petitioner. See id.

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington.[6] To make out a claim of ineffective assistance of appellate counsel, Petitioner

---

[6]The Strickland test applies to claims of ineffective assistance of both trial and appellate counsel. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).

10

must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his trial counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id. at 694. The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 131 S. Ct. at 788 (quotation marks and citations omitted); Premo v. Moore, 562 U.S. ___, 131 S. Ct. 733, 740 (2011) (same).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

11

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as [appellate] counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's conviction. The facts underlying Petitioner's conviction are set forth in the Georgia Supreme Court decision affirming his conviction, as quoted above. See supra Part III.A. Pursuant to § 2254(e)(1), those facts are presumed to be correct.

As noted above, Petitioner alleges in Ground Three of his federal habeas petition that his trial counsel was ineffective in that she failed to listen to an audiotape of his conversations with GBI agents prior to the tape being played at trial. (Doc. no. 1, pp. 10-11; doc. no. 8, p. 4.) In its analysis of this claim on direct appeal, the Georgia Supreme Court noted that Petitioner was the one who insisted the audiotape be played at trial. Sturgis, 646 S.E.2d at 236. The court also found that Petitioner's trial counsel, a criminal defense attorney whose experience included over 150 criminal trials, reviewed a summary of the audiotaped interview prepared by the GBI prior to trial and determined that "the summary was fully consistent with the account of the interview [Petitioner] himself had given her." Id. As a result, the court found that "defense counsel's decision not to seek to obtain the audiotape from the GBI for review prior to trial fell well within 'the wide range of professionally competent assistance' to which a defendant in a criminal case is constitutionally entitled." Id. (quoting Strickland, 466 U.S. at 690).

The Georgia Supreme Court further noted that Petitioner had spontaneously decided during cross-examination to claim that the voice on the tape was not his, thereby "questioning the tape's authenticity and leveling an obviously baseless charge of voice impersonation and evidence fabrication against the GBI." Id. Because listening to the tape

beforehand would not have alerted Petitioner's trial counsel that he would make this sudden claim mid-trial, the court rejected Petitioner's "bald assertion" that a review of the audiotape prior to trial would have given rise to a reasonable possibility of a different outcome. Id. The court also found that Petitioner could not establish prejudice because, even without the audiotape, "the evidence of [Petitioner's] guilt was overwhelming." Id.

Petitioner has offered no additional evidence – much less "clear and convincing evidence" – in support of Ground Three of his federal habeas petition to undermine or contradict the factual determinations of the state court. Moreover, Petitioner has presented nothing to call into question the state appellate court's conclusion, in light of its factual determinations, that Petitioner's trial counsel's decision to forego review of the audiotape was reasonable and that Petitioner was not prejudiced by his counsel's decision not to review the audiotape. In particular, Petitioner offers nothing to call into question the conclusion that his trial counsel's decision not to listen to the tape was reasonable in light of the fact that the summary of the tape she read was consistent with Petitioner's own assessment of the interview. Nor has Petitioner shown anything to refute the conclusion that a review of the tape by his trial counsel would not have changed the result of his trial because the other evidence against him was overwhelming and because such review would not have alerted trial counsel that Petitioner might claim during cross-examination that the tape was fabricated. In sum, there is nothing to suggest that the state habeas court's analysis of Petitioner's case was contrary to Strickland, or that the state habeas court unreasonably applied Strickland's standards to Petitioner's claim of ineffective assistance of trial counsel. Accordingly, Petitioner's claim in Ground Three is without merit.

### C. Ineffective Assistance of Appellate Counsel Claims Rejected by the State Habeas Court

Petitioner argues in Grounds Four through Seven of his federal petition that his appellate counsel provided ineffective assistance by failing to raise on direct appeal several claims of ineffective assistance of trial counsel. In particular, he contends that his appellate counsel should have raised ineffective assistance of counsel claims based on: trial counsel's failure to introduce into evidence crime lab results that showed the bullet removed from the victim's body did not match Petitioner's gun; her failure to inform Petitioner of those crime lab results; her failure to adequately prepare for trial and undue influence on his decision to testify; and her failure to move for a mistrial or request curative instructions when the prosecutor "cross-examined Petitioner in a harsh tone in regard to a single question and then threw his ink pen down in marked frustration" due to dissatisfaction with Petitioner's testimony. (Doc. no. 1, pp. 11-18; doc. no. 8, pp. 5-10.)

In addressing these claims, the state habeas court specifically applied the standards set forth in Strickland, 466 U.S. 668 (1984), Jones v. Barnes, 463 U.S. 745, 751 (1983), and Battles v. Chapman, 506 S.E.2d 838 (Ga. 1998), among other Georgia Supreme Court cases. Based on its application of those standards, it concluded that Petitioner had not shown that his appellate counsel had provided constitutionally ineffective assistance. Here, it cannot be said that the state habeas court confronted a set of facts materially indistinguishable from a Supreme Court case yet reached a different result, or that it applied a rule that contradicts the governing law set forth in Supreme Court precedent; to the contrary, it was correct in applying the two-prong test set forth in Strickland in its evaluation of Petitioner's claim of ineffective assistance of appellate counsel. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir.

15

1991) (holding that the Strickland test applies to claims of ineffective assistance of both trial and appellate counsel). Therefore, the Court will focus on the question of whether the state habeas court was objectively unreasonable in its application of Strickland's standards to the facts of this case.

In addition to the principles from Strickland and its progeny set forth above, see supra Part III.B, in the appellate context, a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones, 463 U.S. 745, 751 (1983). It is up to appellate counsel to winnow out weaker arguments and select the most promising issues for review. Id. at 751-52. Indeed, the appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." Evitts v. Lucey, 469 U.S. 387, 394 (1985).

In order to assess Petitioner's claim that his appellate counsel had been ineffective, the state habeas court heard testimony from Petitioner's appellate counsel, Mr. James Jones. At the hearing, Mr. Jones testified that he became a member of the Georgia Bar in 2001 and that he had been employed as an attorney since that time. (Doc. no. 7-5, pp. 6-7.) He testified that at the time he represented Petitioner, he devoted the 30 to 40 percent of his practice to representing criminal defendants, and he had previously handled several criminal appeals. (Id. at 7.)

In addition, Mr. Jones testified that he met with Petitioner's trial counsel, reviewed the trial transcript and discovery material, and consulted with Petitioner on multiple occasions in person and in writing regarding which issues to bring on appeal. (Id. at 8-9.)

16

Mr. Jones recalled that Petitioner had raised the issue of the "crime lab results," which consisted of a ballistics report indicating that there was insufficient data to match the bullet found in the victim to Petitioner's gun. (Id. at 10-11.) Mr. Jones found this issue to be without merit because Petitioner had admitted during trial that he shot the victim and because the ballistics report was immaterial to the primary defense theory advanced at trial, which was that Petitioner accidentally shot the victim while trying to defend himself. (Id.) Mr. Jones likewise found no viable issue to raise on appeal regarding trial counsel's failure to move for mistrial or to request curative instructions after the episode in which the prosecutor became frustrated during Petitioner's cross-examination and threw his pen, as he felt that trial counsel's decision to respond to the episode with a series of objections was reasonable. (Id. at 11-12.) Additionally, Mr. Jones testified unequivocally that he felt he had raised the most viable and meritorious issues on appeal. (Id. at 11.)

While Petitioner claims that his appellate counsel was ineffective for the reasons set forth in Grounds Four through Seven, the state habeas court concluded otherwise. Having considered the trial record and Mr. Jones's testimony, the state habeas court determined, based on its application of the principles set forth in Strickland, that Petitioner failed to show that any of his appellate counsel's actions constituted deficient performance or resulted in any prejudice as to the outcome of his appeal. (Doc. no. 7-3, pp. 7-8.) In particular, the state habeas court noted that there was never any dispute that Petitioner fired the gun that killed the victim, which rendered the inconclusive ballistics report "wholly immaterial." (Id. at 8.) The state habeas court also reasoned that Petitioner's appellate counsel prepared thoroughly by reviewing the record, investigating potential claims, and bringing the claims that he

reasonably thought had the strongest chance of prevailing. Thus, Petitioner failed to show that his appellate counsel's decision not to raise the issues identified in Petitioner's habeas claims constituted deficient performance or subjected him to prejudice. (Id. at 7.)

Turning its attention to the instant petition, the Court notes that Petitioner has not offered any evidence to undermine or contradict the factual determinations of the state habeas court with respect to the claims of ineffective assistance of appellate counsel set forth in Grounds Four through Seven. Furthermore, Petitioner has not demonstrated that the state habeas court was objectively unreasonable in its application of the standards of Strickland to the facts of his claim. Petitioner offers nothing to explain why it was unreasonable for his appellate counsel not to raise any claim based on the ballistics report given that he admitted to shooting the victim and that his primary defense theory was that he accidentally shot the victim while defending himself. Nor has he offered anything to suggest that it was improper for his appellate counsel not to raise a claim based on his trial counsel's decision to object to the prosecutor's overly zealous cross-examination rather than moving for a mistrial or asking for a curative instruction. Furthermore, while Petitioner now asserts that his trial counsel inadequately prepared for trial and "unduly influenced" his decision to testify at trial, he has provided no factual support for either of these contentions. (See doc. nos. 1, 8.)

In sum, the Court finds that the state habeas court's decision was neither contrary to Strickland nor unreasonably applied Strickland to Petitioner's ineffective assistance of appellate counsel claims. Consequently, Petitioner is not entitled to habeas relief on the claims in Grounds Four through Seven of his federal petition.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 14th day of May, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE